UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KELLI WILLIAMS, | CASE NO. 5:11CV2514 |
| Plaintiff, | JUDGE DAVID A. DOWD |
| v. | Magistrate Judge George J. Limbert |
| BARBERTON SCHOOL DISTRICT BOARD OF EDUCATION, | Report and Recommendation |
| Defendant. | |

This matter is before the Court[1] on the motion for judgment on the pleadings filed on behalf of Defendant, Barberton School District Board of Education on May 11, 2012. ECF Dkt. #23. With leave of Court, Plaintiff, Kelli Williams filed her opposition brief on July 11, 2012. ECF Dkt. #28. With leave of court, Defendant filed its reply brief was filed on August 8, 2012. ECF Dkt. #30.

**I.     Standard of Review**

Federal Civil Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay the trial – a party may move for judgment on the pleadings." A court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as a motion to dismiss. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

In scrutinizing a complaint under Rule 12(b)(6), this Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir.2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions"

---

[1]On November 11, 2011, this matter was referred to the undersigned for general pretrial supervision.

or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

## II.     Facts

Defendant is a political subdivision and city school board, which administers a federal Head Start educational program for low income students. Compl. at ¶4, Am. Answer at ¶2. Head Start is a federal grant program aimed at providing comprehensive child development services for economically disadvantaged children and families with a special focus on helping preschoolers develop early reading and math skills. Compl. at ¶3. Plaintiff served as a "parent coordinator" for the Head Start program between November 2, 1998 and June 9, 2011. *Id.* at ¶4.

At some point during Plaintiff's employment that is not identified in the Complaint, the Head Start program director implemented a finger print and background check security policy that Plaintiff alleges "prevented parents from participating in the program with their children as the federal grant required." *Id.* at ¶8. Plaintiff viewed this policy as not authorized by law, and made complaints to Defendant that the program director was violating the terms of the Head Start grant. *Id.* at ¶8.

Plaintiff alleges that, after she made complaints about the security policy, the program director subjected her to harassment, performance scrutiny, and an assault and battery. *Id.* at ¶¶8, 11 (alleging the program director attempted to build a false disciplinary record), 13 (alleging that Plaintiff was given a spurious performance review on May 25, 2011 by the program director in order to keep her from qualifying for reemployment). Plaintiff contends that the false disciplinary record was created to justify a planned retaliatory termination of Plaintiff's employment. *Id.* at ¶11.

In January of 2010, Plaintiff observed the program director "drag[ ] a child by her arm on the floor as a form of discipline" in violation of the School Board Child Restraint Policy. *Id.* at ¶10. She complained to the Superintendent and she was ignored. Plaintiff further alleges that, in August of 2010, Defendant falsely accused the Plaintiff of failing to report child abuse/neglect based upon the incident that occurred in January of 2010. The accusation was the subject of a *Loudermill* hearing[2] and Plaintiff was ultimately cleared of any misconduct. *Id.* at ¶12.

On June 6, 2011, the Board suspended Plaintiff's contract pursuant to Ohio Rev. Code §3319.172 as part of an "economic reduction in force" affecting the entire school district. Compl. at ¶5, Am. Answer at Exhibit A. On October 21, 2011, Plaintiff filed a complaint in state court alleging a deprivation of her "First Amendment Rights related to the petition and freedom of expression guarantees by the First Amendment to the U.S. Constitution and the 14th Amendment Due Process[3] Clause all actionable under 42 USC 1983 [sic]." Compl. ¶15. On November 18, 2011, the Board removed the case to the United State District Court for the Northern District of Ohio. See Notice of Removal, Doc. 1. On March 15, 2012, Defendant filed its amended answer to the Complaint. See Am. Answer, Doc. 18.

### III. Law

Plaintiff brings this action under Section 1983, alleging deprivations of her rights under the "First Amendment [. . .] of the U.S. Constitution and the 14th Amendment Due Process Clause." Compl. at ¶15. Section 1983 is the procedural vehicle through which a plaintiff may "vindicate the deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under color of state law." *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 585 (2008).

---

[2]The term "*Loudermill* hearing" refers to the process a government entity must afford to a public employee prior to disciplining that employee. See *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985). Such a hearing is held to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 546, 105 S.Ct. 1487.

[3]Plaintiff concedes in her opposition brief that her sole claim is a First Amendment retaliation claim, and that she does not assert a Fourteenth Amendment Due Process Claim.

-3-

To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998).

In free-speech retaliation cases arising in the employment context, the Court must undertake three inquiries:

> (1) Was the individual involved in "constitutionally protected" activity? *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
>
> (2) Would the employer's conduct discourage individuals of "ordinary firmness" from continuing to do what they were doing? *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).
>
> (3) Was the employee's exercise of constitutionally protected rights "a motivating factor" behind the employer's conduct? *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568.

The claimant must establish each prong of the inquiry to prevail.

The first prong of the inquiry is further divided when the individual asserting his or her First Amendment rights is a public employee. Three Supreme Court cases define the contours of the free-speech rights of public employees. The First Amendment protects the speech of employees only when it involves "matters of public concern." *Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In *Connick*, an assistant district attorney, after learning that her supervisor planned to transfer her, solicited information from her colleagues about the office's transfer policy, office morale, and whether supervisors had pressured anyone to participate in political campaigning. *Id.* at 141, 103 S.Ct. 1684. When the supervisor fired her for refusing to accept the transfer, she sued, alleging retaliation against protected speech, that is, her initiation of the survey. *Id.* In rejecting her claim, the Court explained that not all employee speech is protected, only speech that "fairly [may be] considered as relating to" issues "of political, social, or other concern to the community." *Id.* at 146, 103 S.Ct. 1684. When, by contrast, an employee's speech does not relate to a matter of public concern, public officials enjoy "wide latitude" in responding to it without "intrusive oversight by the judiciary in the name of the First Amendment." *Id.*

If the employee establishes that her speech touches "matters of public concern," a balancing test determines the relative interests of the public employee and employer. *Pickering v. Board of*

*Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering*, the Court considered the claim of a high school teacher whom the principal fired after the teacher wrote a letter to the local newspaper, criticizing the school board's budgetary decisions. *Id.* at 564, 88 S.Ct. 1731. In resolving the claim, the Court "balance[d] ... the interests of the teacher, as a citizen, in commenting upon matters of public concern" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. 1731. Reasoning that there was no relationship between the contents of the letter and the "proper performance of [the teacher's] daily duties in the classroom," the Court ruled for the teacher, concluding that the school board's interests did not outweigh his desire to "contribute to public debate" like any other citizen. *Id.* at 572-73, 88 S.Ct. 1731.

In the final case of the trilogy, a prosecutor reviewed a private complaint that a police officer's affidavit used to obtain a search warrant contained several misrepresentations. *Garcetti v. Ceballos*, 547 U.S. 410, 413-414, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). After confirming that the affidavit contained serious falsehoods, the prosecutor wrote a memo to his superiors about his findings, recommended that the office dismiss the case and eventually testified to the same effect at a hearing to suppress the evidence discovered during the search. *Id.* at 414-15, 126 S.Ct. 1951. In the aftermath of these and other actions, the prosecutor claimed that the office retaliated against him by transferring him to another courthouse and by denying him a promotion. *Id.* at 415, 126 S.Ct. 1951.

In rejecting his free-speech claim, the Court did not deny that the prosecutor's speech related to a matter of "public concern" under *Connick*, and it did not take on the lower court's reasoning that *Pickering* balancing favored the employee. It instead concluded that the First Amendment did not apply. "The controlling factor," the Court reasoned, "is that his expressions were made pursuant to his duties as a calendar deputy," making the relevant speaker the government entity, not the individual. *Id.* at 421, 126 S.Ct. 1951 (emphasis added). "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.*

Accordingly, a First Amendment claimant must satisfy each of these requirements to fulfill the first prong of the three-part test: the *Connick* "matter of public concern" requirement, the *Pickering* "balancing" requirement and the *Garcetti* "pursuant to" requirement. Although Defendant asserts that Plaintiff cannot establish her claim under any of these tests, Defendant only challenges the "pursuant to" requirement of *Garcetti* in its motion for judgment on the pleadings.

**IV.    Analysis**

### A. The *Garcetti* requirement

In *Garcetti*, the Supreme Court recognized that citizens who enter government service "must accept certain limitations on [their] freedoms," including limitations on the scope of their First Amendment rights. 547 U.S. at 418, 126 S.Ct. 1951. Observing that public employees "do not surrender all their First Amendment rights by reason of their employment," the Court held that the interest of a public employee "in commenting on matters of public concern" must be balanced against the interest of governmental employers "in promoting the efficiency of the public services it performs through its employees." *Id.* at 417, 126 S.Ct. 1951.

For a public employee's statements to receive First Amendment protection, the public employee must speak "as a citizen" and "address[ ] matters of public concern." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir.2007). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951. Under *Garcetti*, "even employee speech addressing a matter of public concern is not protected if made pursuant to the employee's official duties." *Weisbarth*, 499 F.3d at 545. Thus, in reviewing a public employee's statement under *Garcetti*, the Court must consider both its content and context – including to whom the statement was made – to determine whether the plaintiff made the statement pursuant to her individual duties. *Id.*; *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir.2007).

Moreover, speech by a public employee made pursuant to ad hoc or de facto duties not appearing in any written job description is nevertheless not protected if it "owes its existence to [the speaker's] professional responsibilities." *Weisbarth*, 499 F.3d at 544 (quoting *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951). In *Weisbarth*, the Sixth Circuit concluded that a park ranger's statements

-6-

about morale and performance issues to an outside consultant hired by the ranger department to assess these matters were made pursuant to her official duties, even though participating in the interview was an ad hoc duty not described in the ranger's official job description. *Id.* at 543-44. Likewise, in *Haynes* the Sixth Circuit found that a police officer's memo to his superior officer expressing discontent about the financial cutbacks and changes to the canine-training program that he directed was not protected speech. *See* 474 F.3d at 365. The memo suggested that the cuts would open the police department to allegations of "negligence," "deliberate indifference," and "failure to train," *Id.* at 360, but the plaintiff officer conceded that the new program complied with Ohio law. *Id.* at 365. In concluding that the plaintiff made these statements as a public employee rather than a private citizen, the *Haynes* Court cited the officer's involvement with the canine training program and the fact that he made the statements "solely to his superior." *Id.* at 364. The memo, therefore, communicated "nothing more than 'the quintessential employee beef: management has acted incompetently.' " *Id.* at 365 (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir.1988)).

Defendant argues that Plaintiff's complaints about the fingerprint requirement and the child restraint policy "owe their existence to Plaintiff's responsibilities as the parent coordinator and employee for the Barberton Head Start program." ECF Dkt. #23 at p. 14. Defendant further argues that as the parent coordinator and an employee of the Head Start program, Plaintiff would have been responsible for maintaining compliance with Head Start guidelines. *Id.* Moreover, Defendant contends that Plaintiff, as a school district employee, is legally required to report suspect child abuse and neglect, citing Ohio Revised Code 2151.421. *Id.* As a consequence, Defendant reasons that the speech at issue was made from the perspective of a public employee, rather than a concerned private citizen. Furthermore, because Plaintiff statements were essentially internal complaints directed to supervisors rather than the general public, her complaints were asserted pursuant to her position as the parent coordinator of the Head Start program.

In her opposition brief, Plaintiff argues that the Head Start program is federally funded, and, as a consequence, her termination as a result of a "reduction in force" is an obvious pretext for First Amendment retaliation. Plaintiff further argues that "given [Defendant's] excuse offered for termination gives rise to more questions that it seeks to provide answers to, [Defendant's] motion

-7-

should be OVERRULED outright." ECF Dkt. #28 at p. 6. However, Defendant's motion is predicated solely upon the *Garcetti* "pursuant to" requirement, and Defendant's motivation for terminating Plaintiff's employment is not relevant to that specific inquiry. Next, Plaintiff dedicates a portion of her opposition brief to the argument that her speech touched upon a matter of public concern. As stated previously, Defendant has conceded solely for the purpose of this motion the first two prongs of the *Connick/Pickering/Garcetti* inquiry.

At page eleven of her brief, Plaintiff addresses the *Garcetti* inquiry. Plaintiff argues that "misconduct in the application of a federal educational grant and abuse of children" are "topics this Court could hardly hold are not in the public interest" and "in fact the speech concerning those issues does not derive from a requirement to speak on any job description or list of duties." ECF Dkt. #28 at p. 11. She further argues that she "<u>IS NOT</u> the Head Start program manager with duties to report [Defendant's] misconduct to anyone, and as for a civil duty under Ohio R.C. 2151.421 regarding a state law duty to report child abuse, there is no case that is cited by the Defendant that shows an independent state law duty to make a report to law enforcement about witnessing child abuse is transformed into a job description that may be used as a immunized basis for retaliation against the Plaintiff when she decided to work for the government Defendant." *Id.* (emphasis in original).

Having considered the relevant case law and the particular facts alleged in the complaint, the undersigned recommends that the Court find that Plaintiff's speech was made pursuant to her official duties as parent coordinator of the Head Start program. Plaintiff contends that only the program director had a duty to report misconduct and violations of the Head Start rules and regulations to Defendant, and, as a result, Plaintiff's speech was undertaken as a private citizen. In fact, in her opposition brief, Plaintiff essentially concedes that her speech was undertaken pursuant to her official duties. She acknowledges that the parties to the Head Start program employment contract are bound by Head Start's rules and regulations. Next, she cites 45 C.F.R. §1304.03(6)(i)(A) and §1304.06 for the proposition that grantees under Head Start must ensure that in the administration of the program there is no threat to the health, safety or civil rights of children or staff and deficiencies found in this regard may result in the suspension of grant funding. Furthermore, even

-8-

assuming that Plaintiff's speech was not undertaken pursuant to a written job description, the Sixth Circuit held in *Weisbarth* that speech by a public employee made pursuant to ad hoc or de facto duties not appearing in any written job description is nevertheless not protected if it "owes its existence to [the speaker's] professional responsibilities." *Weisbarth*, 499 F.3d at 544.

The facts of this case most closely resemble the facts in *Haynes*, supra, wherein the Court cited the officer's involvement with the canine training program and the fact that he made the statements "solely to his superior." *Id.* at 364. As in *Haynes*, the speech at issue in this case communicated "nothing more than 'the quintessential employee beef: management has acted incompetently.[4]'" *Id.* at 365 (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir.1988)). Under *Garcetti*, "even employee speech addressing a matter of public concern is not protected if made pursuant to the employee's official duties." *Weisbarth*, 499 F.3d at 545.

Earlier this week, the Sixth Circuit addressed the *Garcetti* requirement in *Handy-Clay v. City of Memphis, Tenn.*, __ F.3d __, 2012 WL 4352228 (September 25, 2012). Handy-Clay was the public record coordinator for the city of Memphis. Her duties included ensuring that record requests from the public were routed to the appropriate records custodian and responded to in a timely manner, reviewing the documents released to prevent the disclosure of confidential information, and supporting the recording and transcription of the minutes of the Memphis Charter Commission. She claimed that her employment was terminated in retaliation for various concerns that she raised, which the Sixth Circuit divided into four categories: (1) the completion of her record-production duties; (2) generalized allegations of disparate treatment and "workplace abuse" within the City Attorney's office; (3) allegations related to violations of city policies related to absences, leave, and pay; and (4) allegations of "retaliation" without further definition.

The Sixth Circuit concluded that only her concerns about abuse of the city leave and pay policies were undertaken as a private citizen, rather than a public employee. However, it is the analysis of the first category of concerns that is relevant to the issue before this Court. Handy-Clay

---

[4]Paragraph ten of the Complaint reads, in pertinent part, "[The program director] was an unqualified and inept program administrator at all times relevant and Plaintiff's complaints to [Defendant] about her conduct jeopardizing the Head Start program were ignored." ECF Dkt. #1-2 at p. 5.

claimed that a change in protocol during her employment created delays in the processing of records requests, and she asserted that an entrenched culture at City Hall led to the concealment of information from the public. The Sixth Circuit provided the following analysis of her speech:

> [I]t is clear under *Garcetti*, as well as our subsequent opinions applying *Garcetti*, that the first category of speech – complaints about obstacles interfering with her ability to produce records – is not protected. Handy-Clay admitted that her primary responsibilities included ensuring that record requests from the public were "routed to the appropriate records custodian and responded to in a timely manner," reviewing the documents released, and "preventing the disclosure of confidential information." Her complaints were directly related to her alleged job responsibilities and, thus, her speech was made in her capacity as an employee and not as a private citizen. See *Garcetti*, 547 U.S. at 421 (noting that disposition memo submitted by plaintiff, a deputy district attorney, was written pursuant to his official duty to advise his supervisor about how to proceed with pending cases); *Fox [v. Traverse City Area Pub. Sch. Bd. of Educ.,* 605 F.3d 345, 349 (6th Cir.), cert. denied, –– U.S. ––––, 131 S.Ct. 643, 178 L.Ed.2d 478 (2010)](determining that teacher's complaints about class size owed their existence to her professional responsibilities); *Haynes*, 474 F.3d at 364–65 (holding that police officer's memorandum criticizing changes to canine program was written pursuant to official duties as canine handler).

Id. at *6. The same is true in the case *sub judice*.

Accordingly, the undersigned recommends that Defendant's motion for judgment on the pleadings should be granted based upon Plaintiff's failure to fulfill the *Garcetti* requirement of the public employee three-part test. However, assuming arguendo that the Court finds that the speech at issue was undertaken by Plaintiff as a private citizen, rather than a public employee, Defendant also contends that judgment must be entered its favor on the second and third inquiries of the free-speech retaliation test.

### B. Adverse employment action

First, Defendant contends that the allegations of harassment, battery, and the creation of a false disciplinary record were all undertaken, according to the Complaint, by the program director who is not a named defendant in this case. Defendant writes, "Specifically, the Complaint does not contain any factual allegations which would connect the actions of the program director to an official policy, custom, regulation, or decision officially adopted or promulgated by the Board." ECF Dkt. #23 at p. 17. Defendant correctly asserts that the Complaint contains no allegations to impose municipal liability on the school district based upon the actions of the program director.

In her opposition brief, Plaintiff asserts for the first time the municipal liability theory or ratification predicated upon *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121 (1988)("[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.' ") However, that theory is not articulated in the Complaint. As a consequence, to the extent that Plaintiff has failed to allege any connection between the actions of the program director and Defendant, Plaintiff fails to state a claim upon which relief may be granted with respect to those specific actions.

Next, Defendant argues that the *Loudermill* hearing in this case would not chill a person of ordinary firmness from continuing constitutionally protected activity "as Plaintiff admits that she suffered no discipline from this conduct." ECF Dkt.#23 at p. 18. The term "adverse action" has traditionally referred to "actions such as 'discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote.' " *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir.2010) (quoting *Thaddeus -X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999) (en banc)). The Sixth Circuit has noted that less drastic employment actions that are de minimis, inconsequential, or trivial do not implicate the First Amendment. See *Brown v. Crowley*, 312 F.3d 782, 801 (6th Cir.2002) (citing *Thaddeus–X* at 398 (6th Cir.1999)). However, even trivial employment actions, taken in the aggregate, can provide a basis for a Section 1983 claim for violating a government employee's First Amendment rights. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir.2010); *Akins v. Fulton Cnty.*, 420 F.3d 1293, 1301–02 (11th Cir.2005).

Here, Plaintiff was vindicated at the *Loudermill* hearing, and, as a consequence, received no discipline. Because she was not disciplined, and the *Loudermill* hearing at issue was not one in a series of numerous other inconsequential employment actions by Defendant, the undersigned recommends that the Court find that the *Loudermill* hearing in this case does not constitute an adverse employment action. Accordingly, the suspension of Plaintiff's contract is the only adverse employment action properly alleged in the Complaint.

### C. Substantial and motivating factor

Finally, Defendant contends that, to the extent that an adverse action exists, Plaintiff's termination was not motivated, even in part, by her speech. Defendant writes:

> Most significantly, the pleadings demonstrate that the Board suspended Plaintiff's contract as part of an economic reduction in force affecting the entire district. See Am. Answer, Doc. 18-1 (evidencing the same). Specifically, in the same resolution in which the Board suspended Plaintiff's contract the Board (1) closed an elementary school "to reduce expenses due to the critical financial situation of schools of the State of Ohio" (Am. Answer, Doc. 18-1, Page ID# 132); (2) suspended the contracts of eight teachers (Am. Answer, Doc. 18-1, Page ID# 134-5); (3) suspended the contracts, in whole or part, of three other Head Start employees (Am. Answer, Doc. 18-1, Page ID# 135-6); and (4) abolished 12 employment positions for financial reasons (Am. Answer, Doc. 18-1, Page ID# 136-7).
>
> Moreover, the suspension of Plaintiff's contract, and the other three Head Start employees, occurred only after consultation with the grantee agency for the Head Start program and the "Parent/Policy Committee." Am. Answer, Doc. 18-1, Page ID# 135. To the extent Plaintiff engaged in protected conduct, such conduct clearly did not motivate the Board's decision. To find otherwise would require the implausible presumption that the Board constructed an entire reduction in force, affecting multiple District personnel, in order to retaliate against Plaintiff.
>
> However, even if the Board did not suspend Plaintiff's contract during an economic reduction in force, judgment on the pleadings must still be granted as there are no plausible allegations in the Complaint that Plaintiff's speech activities motivated the Board's decision to suspend her contract. To be sure, while the Complaint alleges that "[t]he real reason for the Plaintiff's termination was that she made complaints in the public interest," these vague and conclusory allegations of nefarious intent and motivation by the Board are not well-pled, and therefore insufficient to "plausibly suggest an entitlement to relief." *Iqbal*, 129 S. Ct. at 1951. While the Complaint contains factual allegations regarding the intent of Plaintiff's supervisor, it makes no plausible allegation regarding the Board's motivation to suspend her contract. See Compl. at ¶¶8-11, 13 (alleging the same).

ECF Dkt. #23 at p. 19-20. Defendant further contends that, because more than year elapsed between Plaintiff's last alleged protected activity (January of 2010) and Defendant's decision to suspend her contract (June 6, 2011), the motion for judgment on the pleadings should be granted.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. See *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir.2005). At the same time, "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will

-12-

not be sufficient to state ... a claim under § 1983.' " *Id.* quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987)).

The Sixth Circuit analyzed a 12(b)(6) challenge to the "substantial or motivating factor" prong of the First Amendment retaliation inquiry in *Handy-Clay*, supra. The Court first acknowledged that the phrase "motivating factor" has been interpreted to mean "one without which the action being challenged simply would not have been taken." *Handy-Clay* at 11 (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir.2010). The Court further acknowledged that "[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Handy-Clay* at 11 (citing *Paige v. Connor*, 614 F.3d 273, 282 (6th Cir.2010)). However, in both *Handy-Clay* and *Paige*, the Sixth Circuit was able to identify allegations in the respective complaints that would allow a jury to find that the defendants in those cases were motivated, at least in part, by a retaliatory motive. The same is not true here.

In retaliation cases, a causal connection is shown through direct evidence or through knowledge coupled with a closeness in time that creates an inference of causation. *Nguyen v. Cleveland*, 229 F.3d 559, 566 (6th Cir.2000). Close temporal proximity between the employer's knowledge of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal connection – but only if the adverse employment action occurs "very close" in time after an employee learns of a protected activity. *Clark Cty. Sch. Dist. v. Breeden* (2001), 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509; *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008)(employee was fired on the day his employer learned that he had filed an EEOC complaint). Otherwise, temporal proximity between the protected activity and the adverse employment action does not give rise to a finding of causal connection unless "coupled with other indicia of retaliatory conduct." *Dixon v. Gonzales*, 481 F.3d 324, 333–334 (6th Cir.2007); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir.2006).

Here, Defendant voted to suspend Plaintiff's contract approximately a year and a half after her last allegedly protected act. The lapse in time between the protected activity and the adverse employment action is too attenuated to establish causation. See *Hamilton v. Starcom Mediavest Group, Inc*., 522 F.3d 623, 629 (6th Cir.2008) ("[P]roximity alone generally will not suffice where

the adverse action occurs more than a few months-let alone nine months-after the protected conduct."); see also *Arendale v. City of Memphis*, 519 F.3d 587, 606-607 (6th Cir.2008)(two months between EEOC complaint and suspension insufficient, standing alone, to support causal connection); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986) (four months between complaint and discharge insufficient, standing alone, to support inference of retaliation); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir.2001)(three month gap is too long to support an inference of causation). Furthermore, Plaintiff has not alleged any other indicia of retaliatory conduct on the part of Defendant. Without more, the chronology of events does not support an inference of causation, and, therefore, the undersigned recommends that the Court find that Plaintiff has failed to allege sufficient facts to establish that her alleged protected speech was a substantial or motivating factor in her termination.

### **V.**     **Conclusion**

In summary, the undersigned recommends that the Court grant the motion for judgment on the pleadings, ECF Dkt. #23, as Plaintiff has failed to allege sufficient facts to fulfill the *Garcetti* requirement for her public employee First Amendment claim, and, in the alternative, that she has also failed to allege sufficient facts to demonstrate that her alleged protected speech was a substantial or motivating factor in her termination.

IT IS SO ORDERED.

SIGNED AND ENTERED on this 27th day of September, 2012.

*/s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).